IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Earl Wilson, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 20 C |
| *-vs-* ) | |
| ) | |
| Thomas Dart, Sheriff of Cook ) | |
| County, and Cook County, Illinois, ) | |
| ) | |
| ) | |
| *Defendants*. ) | |

# COMPLAINT

Plaintiff Earl Wilson, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343.

2. Earl Wilson is a detainee at Cook County Jail assigned jail number 20170428208.

3. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity for the conditions of confinement at Cook County Jail and the restraint practice at outlying hospitals. Plaintiff also sues Sheriff Dart in his individual capacity arising from the restraint practice at outlying hospitals.

4. Defendant Cook County shares responsibility with defendant Dart for housing detainees at Cook County Jail and is also joined in this

action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

5. Plaintiff suffers from diabetes and hypertension. He requires daily medication and monitoring, including daily insulin shots. Because of these conditions, the plaintiff is at increased risk of severe illness related to coronavirus.

6. Since entering Cook County Jail, the plaintiff has been primarily assigned to various dorms or cells in the Residential Treatment Unit. The plaintiff was assigned to this division due to his serious medical condition.

7. Since January of 2020 the Sheriff and County have been aware that the coronavirus poses a significant risk to the health and well-being of inmates at the jail.

8. On January 24, 2020, policy makers for the Sheriff and Cook County received an e-mail from Roland Lankah, an Environmental Health Specialist for the Sheriff's Office, explaining that in the event of a coronavirus outbreak, it was essential for Cook County Jail to have an "urgent response" to disinfect the contaminated area. These individuals were also informed that that it was critical for each division to have proper personal protective equipment (PPE), including gowns, face-shields, and gloves, along with bleach, readily available in the event of an outbreak.

9. After receiving this e-mail on January 24, 2020, policy makers for the Sheriff and Cook County failed to take reasonable measures to ensure adequate PPE was maintained in each division. Policy makers also failed to take reasonable measures to ensure adequate procedures were in place in the event of an outbreak of coronavirus to disinfect contaminated areas.

10. On March 4, 2020, defendants knew that there were likely multiple cases of coronavirus at Cook County Jail, including several tiers on the third floor of the RTU. On this date, Dr. Chad Zawitz, an infectious disease specialist for Cook County, wrote an e-mail to policy makers for the Sheriff and County noting several dorms in the RTU were under surveillance, that "[e]nhanced sanitation" was advisable for the housing units, and it was essential that staff and detainees to use appropriate hand hygiene. After receiving this e-mail, policy makers for the Sheriff and Cook County failed to take reasonable measures to ensure this was carried out.

11. From March 1, 2020 to April 22, 2020, the plaintiff was held in various dorms and cells in the RTU. When plaintiff was assigned to a dorm, he lived in close quarters with approximately 38 men. Inmates shared showers, bathrooms, and a dayroom which makes social distancing impossible. It was not suitable for mass quarantine or isolation. The conditions in the RTU were poor. There were inadequate cleaning sup-

plies, inmates were not provided mask, the day room was filthy, and the bathrooms were filthy.

    12.    On April 8 plaintiff was transferred from Tier 3H, a dorm with about 38 other inmates, to Tier 2A. At this time, Tier 2A was used for quarantine. On Tier 2A the conditions were very poor. The plaintiff was assigned to a cell where the prior occupant had been diagnosed with coronavirus. The defendants took no action to adequately clean this cell before plaintiff was assigned to the location.

    13.    On April 10 the plaintiff was moved from Tier 2A back to Tier 3H. And between April 18 and April 24, the plaintiff was reassigned to various dorms on the third floor of the RTU.

    14.    The plaintiff complained to the jail's staff about the dangerous conditions of confinement and the inability to maintain safe distance from the ill inmates. Plaintiff also complained to the jail's staff about being placed in a living unit where there was a known case of coronavirus when he was transferred to Tier 2A on April 8, a location that had not been cleaned and disinfected.

    15.    In early April the plaintiff contracted the coronavirus. Prior to plaintiff contracting the virus, the defendants did not make available sufficient cleaning supplies, adequately clean and disinfect high-touch surfaces and objects, or implement social distancing strategies for the population. The living conditions were deplorable; toilets were covered with urine and

feces, mold was prevalent in the shower area, and the dayroom was filthy. And prior to plaintiff contracting the virus the defendants did not offer face masks for the detainees to prevent the spread of the virus.

16. When plaintiff was assigned to Tier 3D in the RTU from April 22 through April 24 the plaintiff was very sick. He had chills, aches, was unable to eat, and on information and belief, he passed out.

17. On April 24 the plaintiff was transferred to St. Anthony Hospital because he was very sick. It was very difficult for the plaintiff to breath and he was prescribed oxygen.

18. Plaintiff was inpatient at St. Anthony until April 29 when he returned to Cook County Jail.

19. On April 30 the plaintiff returned to St. Anthony because he was very sick. He remained inpatient at St. Anthony until May 7, 2020.

20. While inpatient at St. Anthony, plaintiff's hand and leg were restrained to his hospital bed at all times with metal restraints.

21. At all times when plaintiff was inpatient at St. Anthony's he was under the constant view of armed correctional officers.

22. The Sheriff instructs correctional officers to shackle by hand and foot all seriously ill inmates hospitalized at Stroger and other outlying hospitals. This policy was recently explained by the Sheriff's Office in response to a grievance by Honorio Perez:

[Cook County Sheriff's Office Inmate Grievance Response/Appeal Form for PEREZ, HONORIO, ID 2018-0117059. Grievance issue: "332: SECURITY PROCEDURES (Handcuffing/Restraint)". Referred to EX-OPS SUPT on 5/12/20. Response: "Per Sheriff's policy inmates who are patients in an outlying hospital are required to be handcuffed and shackled to the bed. Staff is required to have an unobstructed view of the inmate at all times. If a bedside commode is unavailable staff does unshackle and uncuff for inmate to use the restroom." Personnel: CB Fennessy #1689, signed B. Fennessy #1689, ex-op, 5/28/2020.]

23.    Consistent with Dart's instruction, correctional officers assigned to guard inmates at outlying hospitals engage in a widespread practice of shackling inmates to the bed.

24.    Plaintiff complained to hospital staff about the use of restrains and the pain it caused. In response to a request by nursing to remove the restraints so that plaintiff could lay on his stomach to assist with breathing, the officer refused to remove or reposition the restraints.

25.    Sheriff Dart has personal knowledge of a widespread practice to shackle seriously ill inmates at outlying hospitals because he is involved with setting policy for the correctional staff and has issued public statements regarding this practice.

26.    Sheriff Dart also knows the universal policy to shackling seriously ill hospitalized inmates is excessive and violates the United States Constitution because of the Seventh Circuit's decision in *May v. Sheahan*,

-6-

226 F.3d 876 (7th Cir. 2000). Sheriff Dart also had personal knowledge of the universal restraint policy because his office defended the application of this policy in *Hernandez v. Dart*, 814 F.3d 836 (7th Cir. 2016), to a quadriplegic. Sheriff Dart has taken no action to amend to revise the hospital restraint policy applied to critically ill detainees at outlying hospitals.

27. While detained at St. Anthony the continuous restraint of plaintiff's hand and foot caused significant pain. The restraints bruised plaintiff's extremities and caused bleeding. The restraints also caused permanent marks on plaintiff's skin.

28. Dart's widespread restraint practice, applied to plaintiff, was excessive, caused gratuitous pain, and violated plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

29. Defendants Dart and Cook County also violated plaintiff's rights because the conditions of confinement posed an unreasonable risk to his health. At all times relevant, defendants knew of the serious risk of harm caused by the coronavirus, but failed to take reasonable measures to protect medically fragile inmates from contracting the virus.

30. Plaintiff seeks trial by jury for his damage claim.

It is therefore respectfully requested that the Court award compensatory damages for plaintiff, that the Court award punitive damages against Defendant Dart, and that the costs of this action, including attorney's fees, be taxed against defendant Cook County.

/s/ <u>Patrick W. Morrissey</u>
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10150 S Western Ave. Ste. Rear
Chicago, IL. 60643
(773) 233-7900
patrickmorrissey1920@gmail.com