**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EARL WILSON; CALVIN SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20 C 7009 & 20 C 7119 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THOMAS DART, Sheriff of Cook | ) | |
| County, and COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Earl Wilson and Calvin Smith contracted the novel coronavirus while housed in

the Residential Treatment Unit ("RTU") at the Cook County Jail because of certain medical

conditions. Plaintiffs have separately sued Defendants Thomas Dart, the Sheriff of Cook

County, Illinois, in both his official and individual capacities, and Cook County,[1] seeking

damages for injuries they sustained while detained. In nearly identical complaints, Plaintiffs

seemingly allege claims of unconstitutional conditions of confinement and shackling by

excessive force in violation of the Fourteenth Amendment. Dart now moves to dismiss

Plaintiffs' complaints under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Plaintiffs agree to withdraw their claims against Dart in his individual capacity, leaving only a

*Monell* claim against him in his official capacity. Because Plaintiffs have sufficiently pleaded

enough facts to allege a plausible claim for unconstitutional conditions of confinement and

excessive force against Dart in his official capacity, the Court denies Dart's motions to dismiss in

each case.

---

[1] Plaintiffs bring their claims against Cook County only pursuant to *Carver v. Sheriff of La Salle County*, 324 F.3d 947 (7th Cir. 2003). As such, the Court only addresses Dart going forward.

## BACKGROUND[2]

Dart is the Sheriff of Cook County.  Wilson is a pretrial detainee at Cook County Jail; though presently not confined, Smith was also a pretrial detainee at Cook County Jail during the relevant time period.  Wilson suffers from diabetes and hypertension that requires daily monitoring and medication, including insulin shots.  Due to his medical condition, Wilson is housed in the RTU.  Smith suffers from asthma, diabetes, and bipolar disorder, for which he takes medication.  From December 5, 2019 to April 13, 2020, Smith was assigned to Tier 3G, a dorm also in the RTU.  As a result of their conditions, Plaintiffs are at an increased risk of severe illness related to the novel coronavirus.

Since January of 2020, Dart knew that the coronavirus poses a high risk to the health and well-being of detainees at Cook County Jail.  Despite this knowledge, Dart failed to provide proper personal protective equipment ("PPE"), including gowns, face-shields, gloves, and bleach, to the detainees.  Dart also did not make available sufficient cleaning supplies or masks for the detainees, nor did Jail officials adequately disinfect high-touch surfaces and implement social distancing strategies for the detainees residing in the RTU.  Dart also failed to ensure that cells were properly cleaned after moving inmates who contracted the virus.

By March of 2020, Cook County Jail likely had multiple cases of coronavirus, with several detainees assigned to Plaintiffs' dorms exhibiting coronavirus symptoms.  In April, Plaintiffs contracted the coronavirus and fell very ill.  As a result of contracting the coronavirus, Plaintiffs were transferred to outlying hospitals—Wilson to St. Anthony Hospital, and Smith to Stroger Hospital that same month.  Per Dart's instructions, both Wilson and Smith, like all other

---

[2] The Court takes the facts in the background section from Wilson's and Smith's complaints and presumes them to be true for the purpose of resolving Dart's motions to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

detainees hospitalized at outlying hospitals, were shackled by hand and foot to their hospital beds. They also remained under the constant watch of armed correctional officers. Because both Plaintiffs had difficulty breathing due to the coronavirus, the restraints restricted their ability to follow directions from the nursing staff to lay on their stomachs. The restraints also caused significant pain in their hands and feet, causing cuts and bruising in their extremities.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Unconstitutional Conditions of Confinement Claim

Dart first argues that Plaintiffs have failed to allege any facts to support their claims that they were subjected to unconstitutional conditions of confinement that led to them contracting the coronavirus. Because Plaintiffs are only proceeding against Dart in his official capacity, their claim arises under *Monell v. Department of Social Services of the City of New York*, 436 U.S.

658 (1978). *Monell* requires Plaintiffs to establish that a policy or custom of Dart's office caused the violation of their constitutional rights. *Id.* at 690–91. Dart does not address *Monell*'s specific requirements, but the Court finds that Plaintiffs' allegations generally concern allegedly widespread policies and practices regarding the Jail's sanitation and hygiene policies and practices, the availability and distribution of PPE, and appropriate social distancing of inmates and staff, policies and practices that Plaintiffs claim caused their injuries. Thus, the Court will go on to address whether Plaintiffs have sufficiently pleaded a Fourteenth Amendment claim.

The Fourteenth Amendment governs claims by pretrial detainees regarding their conditions of confinement. *See Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). To state a claim, Plaintiffs must allege that Dart "acted purposefully, knowingly, or perhaps even recklessly" and that his conduct was objectively unreasonable. *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)). Objective unreasonableness "turns on the facts and circumstances of each particular case," *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal quotations omitted). "When evaluating reasonableness, . . . courts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Mays v. Dart*, 974 F.3d 810, 820 (7th Cir. 2020) (citing *Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020)).

Here, Dart does not seem to challenge whether Plaintiffs have sufficiently pleaded the requirement of knowing conduct. Indeed, Plaintiffs allege Dart knowingly failed to take reasonable steps to stop the spread of the coronavirus at the Cook County Jail. Dart instead mounts a challenge to the objective unreasonableness requirement, arguing that he took unprecedented measures to address the spread of coronavirus at the Cook County Jail. In

support, Dart points to the Seventh Circuit's ruling in *Mays v. Dart*, another case challenging coronavirus prevention measures at the Cook County Jail. *Id.* But, as other courts in this district have concluded with respect to nearly identical claims, *Mays* does not conclusively establish that Dart's actions were objectively reasonable. *See Cullom v. Dart*, No. 20 C 4034, 2020 WL 7698366, at *2 (N.D. Ill. Dec. 27, 2020); *Gama v. Dart*, No. 20 C 3449, 2020 WL 6802030, at *3 (N.D. Ill. Nov. 19, 2020) (rejecting Dart's reliance on the district court's findings in *Mays*). Admittedly, in discussing the facts of the case, the Seventh Circuit did note that Dart "took numerous proactive measures to prevent the spread of COVID-19." *Mays*, 974 F.3d at 815. But the Seventh Circuit emphasized that it was "not address[ing] the merits of whether Plaintiffs have demonstrated that they have suffered a constitutional violation" and instead only considering certain legal errors committed by the district court in evaluating whether to grant a preliminary injunction. *Id.* at 822. Thus, *Mays* does not definitively establish that Dart's response to the coronavirus cannot meet the objective unreasonableness standard. *See MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 357–58 (7th Cir. 1997) (a decision on a preliminary injunction "is not a decision on the merits of the plaintiff's suit" (quoting *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997))); *Cullom*, 2020 WL 7698366, at *2 (refusing to find *Mays* has preclusive effect because it involved a ruling on a preliminary injunction request).

Dart also argues that Plaintiffs' allegations are not plausible. In their complaints, Plaintiffs have alleged that Dart failed to take reasonable steps to stem the spread of the coronavirus by failing to provide adequate PPE and sufficient hygiene and cleaning supplies, adequately sanitize common areas, and implement social distancing strategies. Dart, however, takes issue with these allegations, highlighting various steps he took to stem the spread of the

coronavirus at the Cook County Jail that contradict Plaintiffs' allegations. But this is a question for a later stage, as, on a motion to dismiss, the Court must take the facts as alleged in the complaints and draw all inferences in Plaintiffs' favor, without considering Dart's counter-facts. *See Cullom*, 2020 WL 7698366, at *2 (refusing to consider additional facts concerning Dart's response to the coronavirus pandemic proffered by the defendants on a motion to dismiss). Although ultimately Plaintiffs may not be able to sustain their claims, at this stage, Plaintiffs have sufficiently alleged that Dart's actions were "insufficient to protect the medically vulnerable," including Plaintiffs, whose medical conditions created a higher risk of contracting the coronavirus. *Gama*, 2020 WL 6802030, at *3; *see also Cullom*, 2020 WL 7698366, at *3 (allowing plaintiff to proceed on conditions of confinement claim concerning coronavirus prevention measures at the Cook County Jail).

## II.     Shackling Claim

Dart next challenges Plaintiffs' claim that the Jail's restraint policy violates the Fourteenth Amendment.[3] The Due Process Clause prohibits the use of bodily restraints in a way that serves to punish a pretrial detainee. *May*, 226 F.3d at 884. "The use of bodily restraints constitutes punishment . . . if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *Id.*

Plaintiffs agree that shackling advances a valid non-punitive governmental purpose. *See Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005) ("[T]he detention facility has an interest in . . . preventing escapes"); *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) ("Certainly, shackling all hospital detainees reduces the risk of a breach of security and thus furthers a

---

[3] Although Dart analyzed the shackling claim under both the Fourth and Fourteenth Amendments, Plaintiffs clarified in their responses that they seek to proceed only under the Fourteenth Amendment.

legitimate non-punitive government purpose."). But they argue that the application of the shackling policy in their cases was excessive in relation to its escape-prevention purpose. *See May*, 226 F.3d at 884 (finding that policy of continuous shackling of an AIDS patient to a bed while under the constant watch of a guard was "plainly excessive in the absence of any indication that the detainee pose[d] some sort of security risk"). Plaintiffs allege that they remained under the constant observation of armed correctional officers and posed little threat because they struggled with severe symptoms of the coronavirus. They also assert that the restraints restricted their ability to follow the nursing staff's directions to lay on their stomachs to assist with breathing and that the restraints caused bruising and bleeding. Although Dart argues that Plaintiffs offer simply conclusory allegations that they did not pose a security risk, the Court finds Plaintiffs' allegations that they had difficulty breathing and were ill and weak because of the coronavirus, coupled with the allegations that they remained under constant watch of armed guards, sufficient to suggest that the application of the shackling policy to them was excessive. *See Cullom*, 2020 WL 7698366, at *4 (finding plaintiff's similar allegations sufficient to support a claim that the shackling policy was excessive); *Gama*, 2020 WL 6802030, at *4 (same). And because Plaintiffs have alleged that they were shackled based on a common Sheriff's Office policy and practice, at this stage, they may proceed on their claim against Dart in his official capacity under *Monell*. *Cullom*, 2020 WL 7698366, at *4.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Dart's motions to dismiss Plaintiffs' complaints [No. 20-7009, Doc. 19; No. 20-7119, Doc. 19]. The Court dismisses all claims against Dart in his individual capacity.

Dated: June 22, 2021

SARA L. ELLIS
United States District Judge